Good morning, your honors. It's a great honor to be here in this historic courthouse this morning. Your honor, I represent Francisco Tydingco, I'll call him Frank Tydingco, who was convicted after jury trial and site ban back in 2016 of the offense of harboring an Your honors, please, the court. I can recall two years ago when I was preparing for the jury trial, several days before the trial, I was out eating for a run and I was trying to figure out what kind of theme I was going to use for the case, and a little bit odd, but the old Alfred Hitchcock movie, The Man That Knew Too Much, came to my head, and I thought that this case was the opposite of that. This case involved Frank Tydingco, The Man That Knew Too Little. While that theme did not prevail at trial, the case did. Counsel, let me, if I may, ask you the following question. It seems to me that assuming that your argument about the sufficiency of the evidence is not successful, your claims are entirely derivative of the evidence. That is, if she was not properly convicted, then Frank was not properly convicted. Is that correct? That's correct, Your Honor. It also applies to the Rodriguez decision and your instruction in that case. My main question is, it seems to me that, and obviously others may have a different view, but it seems to me that the instructions on harboring and reckless disregard were erroneous, but what I'd like you to address, if you would, is whether the errors, if they were erroneous, were harmless or not. Justice Graber, yeah, to set out my brief, my client was charged with aiding and abetting, as you suggest. He depended largely on the evidence against his wife, Lily. And as the Court's aware, there was no evidence that my client did anything to hide this young girl from immigration or law enforcement. And so the instruction, basically, that was given, well, the judge would not give the 913 instruction, the 9th Circuit instruction. We asked for that, which would have required the jury to find that there was evidence that Frank Tiedenko, as well as his wife, Lily, represented by Mr. Berline, did anything to hide this young lady from detection by law enforcement. There was no such evidence. I cited in my brief and in the record the transcript. I asked the lead agent, Donbrell was his name, whether he had any evidence my client was hiding anything. He said no. So given all the evidence that was presented in the case, I would submit to the Court, respectfully, that the failure to inform the Court or instruct the Court that there had to be a finding of hiding something to hide the accident from detection by law enforcement was an element, and that obviously was prejudicial to my client and led to his conviction. Thank you. Do you want to reserve some time for rebuttal? Yes, I do. We'll hear from your colleague. Thank you. Good morning, Your Honor. May it please the Court, my name is Bruce Berline. I represent Lily Tiedenko. Let me address that question. Absolutely, it was not harmless. Speaking with the reckless disregard during instruction, the government is in complete agreement with us that this meets all the elements of plain error, except for prejudicial. Prejudicial is probably our strongest argument. You have the only evidence that the government points to in their brief, after saying that it has tremendous evidence, points to on the next page, page four, is one sentence in her statement. This statement was summarized. The agent goes in, Agent Militia Schwartz, goes in, talks to my client, Lily, with a translator, takes notes, and then goes back to her office and types up that summary of the conversation. The only thing she says is, yeah, that's the I-94 form, and that's the parole date. But there's no context of what that was in. So we don't know. She probably just said, you see that form? That's an I-94. And you see that date? That's the parole date. But there's no direct evidence that Lily knew what a parole date is or what an I-94. There's no direct evidence at all. So you contrast that with what there is evidence of in her conduct. She was an open book. She comes into the immigration procedure. She comes into Saipan and tells them, I have this Chinese kid. I'm taking him to school. She goes to PSS. She gives them a map to their house. They fill out immigration forms. Everything is an open book. There's absolutely no evidence of hiding. So when you go to the jury, I assume the jury goes in and goes, we need direct evidence. Well, there is none. So, okay, let's go to the reckless disregard instruction. Oh, well, maybe we can take this statement that the government argues is indisputable evidence of her knowledge, and maybe we can morph that into a reckless disregard. That meets the standard in this case, Your Honors, which is basically more than a mere probability but less than a preponderance. So we meet all those elements of the plain error. Unfortunately, I wasn't as smart as the Rodriguez attorney. I didn't object to it. We objected to the harboring. If there's no other questions, I'd like to move to that argument. Sure. Basically, we need a mens rea. We know we need a specific intent to harboring. We look at the other circuits, which the government doesn't really discuss in their. Counsel, the case of United States v. U, Y.O.U., appears to state that there is a requirement of an intention to violate the law, but it doesn't seem to require that the method of violating the law has to be avoidance of detection by immigration authorities. And let me give you a hypothetical. Suppose somebody objects to the immigration laws and goes on television and says, I'm going to harbor this person. I'm doing it intentionally. I hope you catch me because I want to make speeches to the court about why this is an unjust law and so on and so forth. And under your formulation, that person would not be guilty of harboring, even though they had the specific intent to violate the law because they're not trying to avoid detection. So I wonder why the proper instruction wouldn't just be an intention to violate the law. Because I think there needs to be, the jury needs more guidance. I mean, this is such a. Why? I mean, I guess in view of the U case, I don't see why they would have to find a particular kind of intention. They didn't get anything about intention. So you would still win under this theory. But I guess I don't understand why it has to be avoidance of detection as opposed to just a specific intent to harbor someone in violation of the immigration laws. I think that's actually a good point. And actually, if you look at, which is a very good case in this. Unfortunately, it's from a different circuit, the Seventh Circuit in U.S., Costello. They go through the history. They go through a very good discussion. In the end, they just say, you know what it isn't? Harboring isn't just giving somebody a home. And it's an excellent decision. And I agree with you. We just need, in our case, I think we need that to avoid detection language, to follow the pattern jury instruction. In this case, because that's really what was at issue. Because there was no attempt at concealment or hiding. So if you don't give that. I think that would have been better for us. But our problem was the court gave knowingly and linked that to knowingly giving shelter to. Well, that opens up everything. I mean, and Costello actually talks about you've got emergency rooms. You know, you go in and you stay a night at the emergency room if they know you're an illegal alien. Churches, parents. They talk about parents giving their kid who's an illegal alien. Let them spend the night at somebody else's house. You're going to open up this floodgate of litigation. Costello talks about there's 10.2 back when it was decided, I think 2012. 10.2 million illegal aliens here. I mean, when you multiply that to, oh, how many, where are they living? I think we've got big problems. And I think that the government's definition of just giving shelter to goes far afield of what was intended. Thank you, counsel. I'm out of time. Thank you. Good morning, Your Honor. Scarth Backe on behalf of the United States. I apologize in advance. This is my third oral argument in six days, and I was not counsel for any of them at the district court level, so I'll have to rely on my notes more than I'm usually comfortable with. Could you speak into the mic a little bit? Yes, sir. Thank you. So why was this case filed? I mean, you didn't file it. I understand that. But every prosecutor's office has guidelines about, you know, making sure you're not charging the emergency room staff for treating and holding overnight somebody who's an illegal alien. But what was the deciding factor here? Was it the money? No, it was not part of the trial record, but it was alluded to in our brief, and it's part of the lower court. Not part of the trial record. It's part of the lower court docket. But Division of Youth Services was called out for a child case, allegations of abuse. They come upon the child, find out she's illegal. It's referred to us from there. As said in our brief, they interviewed the parents. The parents said they paid money for the girl to come here. The girl said she was abused. That's how it gets launched. But at the heart, this is a case about Lillian Frank Tydinko taking advantage of the CNMI's unique entry requirements and entering into a business relationship with the parents of a minor child in China and bringing her to the United States, affording her shelter, so that she may pursue better educational opportunities in the United States. The government submits that the primary issue here really is the jury instruction. We will concede that pretty much if either Frank or Lillie are correct, that we would not be able to establish harmless error. In particular, the issue is were the instructions given below a correct statement of law or sufficiently a correct statement of law, or did they require more? For example ---- Well, let me start by asking you the same question as I asked Lillie's counsel, and that has to do with the effect of our holding in the United States v. U. that says adequate jury instructions, therefore, must require a finding that the defendants intended to violate the law. That's a direct quote. And without that, I don't understand how it can be adequate under our precedence, regardless of the theory of it. That was the holding. Yes, Your Honor, to the extent that U controls, it would be problematic for the government's case. We don't think that U should control. We think it was based on faulty reasoning, and also we don't believe ---- So what? We're bound by our own precedence whether they're smart or not smart, whether they use good reasoning or bad reasoning as a three-judge panel. Well, I mean, we can always take a case in back if we think that it was poorly decided, but that's not a basis to distinguish it, is it? Well, the basis to distinguish it is that it's not the direct holding of U. It's been used and extrapolated from that, and other cases have said that. How is that sentence I read not a holding? Well, the holding was the defendant in that case was saying that knowingly should have been inserted. So that was the issue that they addressed. And so they said you don't need knowingly because they had already an instruction of the sort that defendants here want, and that that was adequate to require the jury to find what it had to find, which was an intention to violate the law. Yes, Your Honor. I mean, the government, as stated in our briefs, would characterize that as dicta, unnecessary. That comment, which has been relied upon subsequently, is not necessary to the court's holding to address the issue of knowingly. But I think that there's an — that we would have to resolve the issue of U in its relationship to Acosta v. Evans. And how do those two things coexist? Well, it seems to me they coexist because a statement that you have to intend to violate the law can be fulfilled by a number of different kinds of evidence. It could be the purpose of evading the immigration authorities, or it could be, as I suggested in my hypothetical, an intention to be civilly disobedient but intentionally violating the law. There are a number of evidentiary ways. So you don't need to specify the evidentiary ways, but you do need to specify the intent, it seems to me. Your Honor, I mean, again, we're — as shown in our brief, I mean, we truly believe that U was wrongly decided, that imposing an intent element where none exists and none is allowed is impermissible. And so we would ask this Court to strive to hold that U is dicta and not holding because respectfully submitted, it is based on poorly reasoning, and it cannot survive in the light of subsequent Supreme Court cases such as — Specifically what cases are inconsistent? Carter, which was the case that said if you have a concern about the lack of a mental state, and there is a mental state in this case, there clearly is already a mental state, a sufficient mental state. But Carter says if you're concerned that a mental state must be imposed in a statute because one is lacking, then that can be fulfilled by general intent or knowledge. And once that is satisfied, it's over, and you cannot impose an additional burden on the government where none exists in the language of the statute. And if you look at other cases like Bailey, where they reversed the imposition of specific intent where none existed, it was a purposeful requirement in that case, just like it would be in this case. And that language — the word intent is not in the statute. And I would think a fair reading of it, it's clearly a general intent crime. And so for those reasons, when we're talking about intent to violate the law, that's not there, and it shouldn't be there. For other circuits, which — and to be clear, the government — this is not about which is the best definition for harboring, because I would disagree with the characterization that this Court can consider other jury instructions used in other circuits. This really comes down to you, Acosta D. Evans, and the Supreme Court, because the defendants below at no point in time were offering up other circuit jury instructions. So that is — the jury instructions, were they sufficient? Were they a sufficient statement of the law? We would submit they were. Also important to point out, the jury instructions, in order to convict Lilly, the jury had to find three mental states, knowing of the status, specific intent to harbor, which I'll concede I don't know what that means, but also for the purpose of financial gain, of which she was found guilty on. And so there is — it's been alluded to in some cases that perhaps — stay in case, clearly dicta, but that that is a sufficient basis, which is cited in our brief, to convict, that the government can prove that it was done. We do not have to prove purposeful avoidance of immigration authorities that for the purpose of commercial or financial gain is sufficient. And I gather — I just want to make sure I understood your initial point, that you agree that if there is instructional error, it's not harmless. Yes, Your Honor. I don't believe I have anything further. All right. Thank you. Thank you. We'll give you a minute for rebuttal if you want it, or if you don't, that's fine. I'll take that, Your Honor. I just want to reaffirm that most of this has been decided in you and other circuits. There's great cases. Second Circuit, Third Circuit, Seventh Circuit, and Sixth Circuit have all talked about this. I know it's not a precedent in this jurisdiction, but it's incredibly instructive to read that. With the Dan case, Mr. Bakke talks about the Dan case. Dan didn't talk about this issue. It said, look, they used the pattern jury instruction. And the Dan case said, you're stuck with that, so use it. And the court said, no, we gave you the proper jury instruction. And that contained the concealment in that case. So that's not really relevant. But the relevant fact is that there was absolutely no hiding or any attempt to conceal any of this by my client, Lilly. And I think we meet those bases for the plain error on the reckless disregard. Thank you. Thank you, counsel. Thank you both for your arguments and brief. The case just argued to be submitted for decision. And we'll proceed to the next case on the oral argument calendar, which is Guerrero v. Sessions.
judges: Thomas, Graber, Lasnik